NOT FOR PUBLICATION (Doc. No. 48)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| JAMES E. PARKER, SR., : | |
| : | |
| Plaintiff, : | |
| : | Civil No. 08-6242 (RBK/AMD) |
| v. : | |
| : | **OPINION** |
| CUMBERLAND COUNTY : | |
| DEPARTMENT OF CORRECTIONS, et : | |
| al., : | |
| : | |
| Defendants. : | |

**KUGLER**, United States District Judge:

Plaintiff claims that Defendants violated his Eighth Amendment rights while he was incarcerated at the Cumberland County Jail because they were deliberately indifferent to his need for medical care and to his conditions of confinement. Plaintiff also asserts a negligence claim under the New Jersey Tort Claims Act. This matter comes before the Court pursuant to Defendants Cumberland County Department of Corrections, Correctional Medical Services, Inc., Darlene Cochran, and Tasha Thomas's motion to dismiss Plaintiff's Amended Complaint for failure to state claim. Because Plaintiff fails to allege facts sufficient to conclude that Defendants acted with deliberate indifference, the Court dismisses Plaintiff's Eighth Amendment claims. Because Defendants withdraw their motion to dismiss Plaintiff's negligence claim under the New Jersey Tort Claims Act, the Court denies that portion of Defendants' motion as moot.

I.  **BACKGROUND**[1]

At all relevant times, Plaintiff was an inmate at the Cumberland County Jail in Bridgeton, New Jersey.  (Amd. Compl. ¶ 2).  Plaintiff alleges that "on or around late September 2007" he "first noticed a boil and tenderness on his inner left thigh, which he believed might be a dangerous and contagious bacterial staph infection known as MRSA."  (Id. ¶ 9).  Plaintiff was aware of the symptoms of MRSA because the prison provided educational health materials.  (Id. ¶ 10).  He also knew that MRSA can be a life-threatening infection if not promptly and adequately treated.  (Id.).  As a result, "Plaintiff immediately sought to bring the fact of his suspected MRSA infection to the attention of medical personnel at the" prison, including Defendants Cochran and Thomas, who both worked as prison nurses.  (Id. ¶ 11).

Plaintiff was evaluated by a nurse on October 1, 2007.  (Id. ¶ 12).  The nurse determined that Plaintiff required medical attention from a physician.  (Id.).  A physician examined Plaintiff on October 3, 2007.  (Id. ¶ 14).  By this time, Plaintiff's boil had worsened and the infection had created an abscess that covered a ten to twelve inch area of his inner left thigh.  (Id. ¶ 15).  The physician diagnosed Plaintiff with cellulitis of the thigh and ordered that he be sent to the emergency room at a nearby hospital.[2]  (Id. ¶ 16).  Plaintiff was admitted to the Emergency Department at Bridgeton Health Center on October 4, 2007, where his body temperature elevated and he was prescribed antibiotics and pain medication.  (Id. ¶ 17).

On October 5, 2007, Plaintiff was reevaluated and sent to the South Jersey Healthcare Regional Medical Emergency Department in Vineland, New Jersey.  (Id. ¶ 18).  Plaintiff's infection worsened and the swelling increased.  (Id.).  On October 8, 2007, doctors surgically

---

[1] These facts are drawn from Plaintiff's Amended Complaint dated March 18, 2010.

[2] Plaintiff alleges that cellulitis is "a more generic medical term commonly used to describe forms of skin infections caused by various bacteria, including strains of strept and staph bacteria."  (Id. ¶ 16).

2

removed infected tissue "from [Plaintiff's] . . . grossly swollen leg." (Id. ¶ 20). A post-operative pathology report confirmed that Plaintiff had contracted MRSA. (Id. ¶ 21).

Plaintiff alleges that "Defendants knew of [his] need for medical care and treatment to address his symptoms and condition, and yet acted with deliberate indifference when they refused to and delayed in providing that medical care and treatment for a non-medical reason." (Id. ¶ 30). As a result of the infection and surgery, Plaintiff walks with a limp, remains in constant pain, has trouble standing for more than 30 to 60 minutes, has a large scar on his thigh, and suffers from anxiety and distress. (Id. ¶ 25).

Plaintiff also claims that conditions at the prison were unsanitary. For example, Plaintiff alleges that he was required to wear jumpsuits that were not properly laundered because "the temperature of the water used in washing such jumpsuits" was not hot enough to prevent Plaintiff from being exposed to MRSA. (Id. ¶ 38). Plaintiff was also required to wear jumpsuits when they were damp and wet. (Id. ¶ 39). According to Plaintiff, these conditions prompted the spread of MRSA and caused his infection. (Id. ¶ 40). Plaintiff was also required to clean and sanitize areas in and around his cell, but Defendants allegedly did not provide him with adequate agents, antiseptics, and tools. (Id. ¶ 41). Finally, Plaintiff claims that Defendants failed to provide sanitary conditions because they did not provide prisoners with alcohol-based hand sanitizer. (Id. ¶ 42).

Plaintiff asserts three claims against Defendants. First, Plaintiff asserts a Section 1983 claim for cruel and usual punishment under the Eighth Amendment based on Defendants' alleged deliberate indifference regarding his need for timely and adequate medical treatment (Count One). Second, Plaintiff asserts a separate Eighth Amendment claim based on Defendants' alleged deliberate indifference to the unsanitary conditions of his confinement

(Count Two). Third, Plaintiff asserts a negligence claim under the New Jersey Tort Claims Act (Count Three). On this motion, Defendants seek to dismiss only Counts One and Two.[3]

## II. LEGAL STANDARD

"A Rule 12(c) motion for judgment on the pleadings is treated like a motion to dismiss under Rule 12(b)(6)." Bor. of Sayreville v. Union Carbide Corp., 923 F. Supp. 671, 676 (D.N.J. 1996) (citing Turbe v. V.I., 938 F.2d 427, 428 (3d Cir. 1991)). Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two-part analysis. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11. First, the court must separate factual allegations from legal conclusions. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common

---

[3] Defendants originally moved to dismiss Count Three based on the statute of limitations. However, in opposition to Defendants' motion, Plaintiff submitted a copy of the Tort Claims Act Notice that he timely filed pursuant to N.J.S.A. 59:8-8. Defendants subsequently withdrew their motion to dismiss Count Three. Because Defendants withdrew their motion, this Court need not address the propriety of considering Plaintiff's Tort Claims Act Notice on this motion to dismiss.

4

sense." Id.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  See id.

**III.   DISCUSSION**

   **A. Deliberate Indifference To Plaintiff's Need For Timely And Adequate Medical Treatment**

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-104 (1976); Rouse v. Plantier, 182 F.3d 192, 197-96 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege:  (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Estelle, 429 U.S. at 106; Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The Third Circuit has defined a serious medical need as:  (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss."  Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotations and citations omitted); see also Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

5

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden Cnty., 95 F. Supp. 2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment … [which] remains a question of sound professional judgment." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for nonmedical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. See Rouse, 182 F.3d at 197. The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. Atkinson, 316 F.3d at 266; see also

Lanzaro, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen … prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

This Court finds that Plaintiff has not pled facts that could plausibly support the claim that Defendants knew about Plaintiff's condition and deliberately delayed necessary treatment.[4] First, Plaintiff's allegations do not support the conclusion that Defendant's delayed treatment. Plaintiff alleges that he told Defendants about "a boil and tenderness on his inner left thigh" sometime "on or around late September 2007." (Amd. Compl. ¶ 9). Plaintiff admits that Defendants examined the boil on October 1, 2007. On October 3, 2007, just two days later, he was examined by a physician. The next day, he was then admitted to the hospital, where he was under the care of medical staff not within Defendants' control or supervision.

On its face, this timeframe does not rise to the level of deliberate indifference. There are no factual allegations in the Amended Complaint to support the conclusion that this timeframe was an inappropriate response to Plaintiff's condition. To be sure, Plaintiff alleges that MRSA must be treated "promptly," but he provides no facts to support his assertion that the prison's response, which occurred within days, was so tardy as to constitute deliberate indifference to this condition. In other words, delay by Defendants is not self-evident from Plaintiff's allegations.[5] See Sturdivant v. Speziale, No. 08-6279, 2010 U.S. Dist. LEXIS 2319, at *7-9 (D.N.J. Jan. 11, 2010) (holding that prisoner failed to state a claim regarding medical care where plaintiff was

---

[4] The parties agree that Plaintiff's infection qualifies as a serious medical condition.

[5] Although Plaintiff alleges that his condition worsened over time and that he ultimately lost significant tissue from his thigh, these facts do not suggest that Defendants delayed Plaintiff's access to medical care. Indeed, Defendants admitted Plaintiff to the hospital within days of first examining him. He was then under the care of nonprison medical staff for five days before doctors operated on him.

7

seen twice by nurse regarding painful "boil" but only diagnosed with MRSA on second visit). Thus, Plaintiff's allegations do not include sufficient factual content to state a "plausible" claim for relief. See Iqbal, 129 S. Ct. at 1949.

    Second, even if Plaintiff's alleged timeframe was somehow improper, Plaintiff must do more than allege that Defendants were negligent in providing timely medical care.[6] See Rouse, 182 F.3d at 197 ("It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"); Szemple v. UMDNJ, No. 10-258, 2010 U.S. Dist. LEXIS 111324, at * (D.N.J. Oct. 14, 2010) ("At most, Plaintiff may have pleaded a case of medical malpractice, that does not warrant relief under § 1983."). Simple negligence is not enough to state a claim under the Eighth Amendment. See Gittlemacker v. Prasse, 428 F.2d 1, 6 (3d Cir. 1970) ("More is needed than a naked averment that a tort was committed under color of state law. . . ."). Plaintiff must allege facts sufficient for this Court to plausibly infer that Defendants deliberately withheld or delayed necessary medical treatment. See Lanzaro, 834 F.2d at 347 (noting that "[deliberate indifference" may be demonstrated by alleging that "prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'") (quoting Todaro v. Ward, 565 F.2d 48, 53 (2d Cir. 1977)). Plaintiff does not allege any such facts. See Sturdivant, 2010 U.S. Dist. LEXIS 2319, at *7-9 (holding that prisoner failed to allege deliberate indifference because prison nurse treated his painful "boil" and ultimately diagnosed him with MRSA). He simply assets in conclusory terms that Defendants failed to provide prompt treatment.

---

[6] This Court expresses no opinion regarding the merits of Plaintiff's negligence claim under the New Jersey Tort Claims Act.


### B. Deliberate Indifference To Plaintiff's Conditions Of Confinement

It is well-settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer, 511 U.S. at 831. To state a claim under the Eighth Amendment for deliberate indifference to a prisoner's conditions of confinement, an inmate must allege both an objective and a subjective component. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation." Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346). Only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. Hudson, 503 U.S. at 9. The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer, 511 U.S. at 835; Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). However, although the Eighth Amendment requires that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 349. To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. Id. at 347. An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of substandard conditions and "acted or

9

failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

Plaintiff fails to state a claim regarding the conditions of his confinement because he fails to allege facts demonstrating Defendants' deliberate indifference to a substantial risk of harm. The core of Plaintiff's claim is that Defendants' distribution of educational health literature proves that Defendants knew that the prison conditions were conducive to MRSA outbreaks. According to Plaintiff, Defendants' acted with deliberate indifference because they failed to take adequate measures to protect against the spread of MRSA notwithstanding their knowledge that prisons are conducive to the transmission of MRSA. Specifically, Plaintiff claims that Defendants did not adequately wash and dry prisoner jumpsuits and failed to provide proper cleaning agents for prisoners to clear their cells.

Those allegations do not rise to the level of "deliberate indifference to a substantial risk of harm." Ingalls, 968 F.Supp. at 198. Although Plaintiff alleges various things that Defendants could have done to make the prison more sanitary, Plaintiff does not allege that Defendants knew that current conditions at the prison were causing the spread of MRSA and deliberately failed to improve those conditions. Even if wet jumpsuits are conducive to the spread of MRSA and Defendants' cleaning agents were inadequate, Plaintiff must allege that Defendants knew these things and deliberately failed to correct them. Plaintiff makes no such allegations. He claims only that Defendants knew that prisons are generally conducive to the spread of MRSA because Defendants distributed health literature discussing MRSA. That allegation alone is insufficient to demonstrate that Defendants knew of a real risk to Plaintiff caused by the particular conditions at the prison and acted with deliberate indifference regarding that risk.[7]

---

[7] Indeed, Defendants' distribution of health literature is indicative of the fact that they were aware of a general risk to prisoners and were taking particular steps to mitigate that risk.

10

Plaintiff relies on Sturdivant in support of his conditions-of-confinement claim. In that case, the plaintiff was diagnosed with MRSA during a visit with a prison nurse. Sturdivant, 2010 U.S. Dist. LEXIS 2319, at *2. The nurse told the plaintiff that there had been a "terrible outbreak of MRSA/staph infection in the jail." Id. Notwithstanding the known outbreak, the jail did not segregate or quarantine inmates with MRSA. Id. Thus, the plaintiff properly alleged that the jail acted with deliberate indifference because it knew of an actual outbreak of MRSA but failed to take steps to protected uninfected inmates from exposure. The plaintiff also alleged that the prison was overcrowded, bug-infested, and that there were inadequate cleaning supplies. Id.

Unlike the plaintiff in Sturdivant, Plaintiff does not allege that there was a known MRSA outbreak in the prison and that Defendants failed to take steps to protect uninfected inmates. Plaintiff alleges only that Defendants were generally aware that prisons are conducive to the spread of MRSA and that they failed to take all conceivable steps to stop the spread of MRSA. This does not amount to deliberate indifference to a substantial risk of harm. Plaintiff must allege facts sufficient to conclude that Defendants acted with a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer, 511 U.S. at 835.

IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss Counts One and Two of Plaintiff's Amended Complaint without prejudice. Because Defendants withdraw their motion to dismiss Plaintiff's claim under the New Jersey Tort Claims Act, the Court denies that portion of Defendants' motion as moot.

Dated: 11/15/10 /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge